IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAVID WOOD, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-18-3482 |
| MARYLAND DEPARTMENT OF TRANSPORTATION, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

In 2016, Plaintiff David Wood sued the Maryland Department of Transportation (MDOT) and Motor Vehicle Administration (MVA) ("Defendants"), alleging that the denial of his application to renew his driver's license violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794. That suit was dismissed, and the Fourth Circuit affirmed. *Wood v. Md. Dep't of Transp.* (*Wood I*), Civ. No. JFM-16-3727 (D. Md. Mar. 17, 2017), *aff'd*, 732 F. App'x 177 (4th Cir. 2018) (unpublished). Plaintiff then filed this lawsuit, renewing his ADA and Rehabilitation Act claims and seeking the same declaratory and injunctive relief as his first suit. (ECF No. 1.) Defendants filed a motion to dismiss arguing that the claims are barred by res judicata. (ECF No. 11.) No hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, the motion will be granted.

## I. *Background and Prior Litigation*

Wood has an ocular condition, retinitis pigmentosa, that affects his peripheral vision. (Compl. ¶ 7, ECF No. 1.) In 2015, Wood applied to renew his Maryland driver's license, but his application was denied. (*Id.*) Maryland law requires "[a] continuous field of vision of at

least 140 degrees" as a condition of eligibility for an unrestricted noncommercial license and permits restricted licenses for applicants with "[a] continuous field of vision of at least 110 degrees." Md. Code Ann., Transp. § 16-110.1(a)(1)(ii), (c)(1)(ii). Wood admits he did not meet the minimum field of vision requirement for a restricted license at the time of his application. (Compl. ¶ 42.) Notwithstanding that fact, he contends he is "otherwise qualified" for a Maryland license because he is a safe driver with a spotless record. (*Id.* ¶¶ 59–60.) He argues that the visual field requirement is unreasonable, and that the ADA and Rehabilitation Act require "an individualized assessment of his driving ability" before he can be denied a license. (*Id.* ¶¶ 5, 58.)

In the first lawsuit, Judge J. Frederick Motz dismissed Wood's case, concluding, first, that, "[u]nquestionably, Wood does not meet Maryland's field of vision requirement," and, second, that "individualized consideration [of an applicant's ability to drive] is unnecessary under the law." *Wood I*, Civ. No. JFM-16-3727, at 1 (quotations omitted). Judge Motz cited guidance from the Department of Justice (DOJ), which states that "[a] public entity may establish . . . vision requirements that would exclude some individuals with disabilities, if those requirements were essential for the safe operation of a motor vehicle." *Id.* Judge Motz acknowledged Wood's contention that Maryland's field of vision requirement was "outdated," but held that Wood failed to provide factual allegations in support of that assertion. *Id.*

Wood appealed, and the Fourth Circuit affirmed. *Wood v. Md. Dep't of Transp. (Wood II)*, 732 F. App'x 177, 185 (4th Cir. 2018) (unpublished). The court ruled that Wood "does not and cannot" meet the field of vision requirement, with or without an accommodation, *id.* at 184–85, that Maryland was permitted under federal law to promulgate "reasonable vision standards" for drivers' licenses, *id.* at 183, that federal disability statutes do not require an individualized assessment before denying a license under such a standard, *id.*, and that Wood

"proffer[ed] no plausible argument for why [Maryland's standard] is unreasonable" or "somehow inconsistent with Congress's intent," *id.* at 183–84, 185.

In this lawsuit, Wood seeks to "correct[] factual misunderstandings in the [Fourth Circuit opinion] [and] plead[] facts deemed missing from the first complaint." (Compl. ¶ 3.) Wood newly alleges: that Maryland's field of vision standard is inconsistent with decades of ophthalmological research recommending individualized assessment for cases like Wood's, (*id.* ¶¶ 52–60); that crash avoidance technology available in many modern cars can provide a "reasonable accommodation" to compensate for visual field impairment, (*id.* ¶ 40); and that, contrary to the Fourth Circuit opinion, his field of vision in 2009, when he was permitted to renew his license without demonstrating a 110-degree field of vision, and in 2015, when his renewal application was denied, was "substantially similar," (*id.* ¶¶ 23–25).

## II. Legal Standard

On a motion to dismiss, the plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court takes well-pled allegations as true and views facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997). But, the court need not accept as true "'naked assertion[s],'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original), nor "legal conclusions couched as facts," *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012).

## III. Discussion

"Res judicata, also known as claim preclusion, bars a party from relitigating a claim that was decided or could have been decided in an original suit." *Laurel Sand & Gravel, Inc. v.*

*Wilson*, 519 F.3d 156, 161 (4th Cir. 2008); *see also Pueschel v. United States*, 369 F.3d 345, 355–56 (4th Cir. 2004). Its purpose is to "protect 'litigants from the burden of relitigating an identical issue with the same party'" and to promote "'judicial economy by preventing needless litigation.'" *Laurel Sand*, 369 F.3d at 161–62 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)). The doctrine bars an action when three elements are met:

> (1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; (2) the parties are identical, or in privity, in the two actions; and (3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding.

*Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999) (quoting *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough*, 81 F.3d 1310, 1315 (4th Cir. 1996)); *see also* Restatement (Second) of Judgments § 17 (Am. Law Inst. 1982). Here, the elements are met: this lawsuit involves parties and claims identical to the prior suit, which was dismissed with prejudice and affirmed. None of Plaintiff's arguments to the contrary has merit.

With respect to the first element, Plaintiff attempts to characterize the prior lawsuit as having been "dismissed without prejudice." (Compl. ¶ 2). He argues that, because Judge Motz's dismissal order "did not *explicitly* say that the case was dismissed for failure to state a claim upon which relief may be granted," it should be construed otherwise. (Opp'n Mot. Dismiss at 5, ECF No. 14.) This reading is incorrect. The dismissal order plainly granted a motion made under Federal Rule of Civil Procedure 12(b)(6). *See* Dismissal Order at ¶ 1, *Wood I*, Civ. No. JFM-16-3727 (ECF No. 17) (granting the motion docketed at ECF No. 9); Motion to Dismiss at 1, *Wood I*, Civ. No. JFM-16-3727 (ECF No. 9) (moving under Rule 12(b)(6)). Plaintiff suggests that, without language to the contrary, a dismissal is without prejudice, but the Rules set out the opposite presumption: "*[u]nless the dismissal order states otherwise*," dismissals under

4

Rule 12(b)(6) "operate as an adjudication on the merits." Fed. R. Civ. P. 41(b) (emphasis added). Because the dismissal order does not state otherwise, it was with prejudice.

Plaintiff also argues that "a plaintiff should be given at least one chance to amend the complaint before dismissing the action with prejudice." (Opp'n Mot. Dismiss at 5.) To the extent this is an argument that claim preclusion should not apply because Plaintiff did not amend his complaint before his first suit was dismissed, the Court disagrees. First, Plaintiff's view would effectively render every dismissal of an unamended complaint without prejudice. But Rule 41 addresses situations in which dismissals are presumed to be without prejudice, and it provides no such sweeping exception. Second, Plaintiff *had* the opportunity to amend during the prior litigation; he simply chose not to exercise it. He neither amended his complaint "as a matter of course" under Rule 15(a)(1), nor moved to amend with leave of the court under Rule 15(a)(2). More importantly, even if he had been improperly denied a chance to amend, he could have raised that objection in an appeal or a motion to reconsider. Plaintiff's earlier failure to flesh out his allegations via an amended complaint, or to exhaust opportunities for doing so, provides no basis for an exception to the ordinary preclusion rules now. Thus, the first judgment was final and on the merits.

With respect to the third element of claim preclusion, although the new Complaint sets forth facts not previously alleged, they are still part of the "same claim" already litigated. Claim preclusion prevents relitigation not only of claims actually raised, but also of claims that "could have been raised." *Pittston Co.*, 199 F.3d at 704; *see also Laurel Sand & Gravel*, 519 F.3d at 162. A claim is "identical for claim preclusion purposes . . . [if it] 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.'" *Pittston Co.*, 199 F.3d at 704 (quoting *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986)). Here,

5

the new allegations derive from the same transactions as the first suit: the denial of Plaintiff's 2015 renewal application and his informal appeals unsuccessfully seeking individualized reconsideration. The Court sees no reason—and Plaintiff offers none—that the newly alleged facts would not have been available during the first suit. The new facts involve his visual condition in 2015, ophthalmological research that Plaintiff alleges has existed for decades, (Compl. ¶¶ 52, 54), and modern driving technology that could only be relevant as a potential accommodation if it were available at the time he sought a license.[1] It is the plaintiff's "duty, as the master of [his] complaint, to make sure that the district court identified all of [his] claims" in the first lawsuit. *Pueschel*, 369 F.3d at 356. Wood's failure to do so does not prevent the first judgment from nonetheless "extinguish[ing] all [his] rights . . . to remedies against the defendant[s] with respect to all or any part of the transaction . . . out of which the action arose." Restatement (Second) of Judgments § 24.

Plaintiff's other arguments seek an exception to claim preclusion, but he does not identify a viable ground for one. First, he argues that the Fourth Circuit's decision was "based, in part, on an erroneous factual assumption about the nature of [] Wood's field of vision." (Opp'n Mot. Dismiss at 6.) In *Wood II*, the Fourth Circuit reasoned that Wood's "impaired field of vision" was a "relatively recent development," because renewed licenses expire after five years and Maryland requires a recent vision test for renewal. 732 F. App'x at 180 n.1 (citing Md. Code Ann. § 16-115(a)(1), (h)). The court inferred that "Wood must have demonstrated a field of vision of at least 110 degrees as of November 2009." *Id.* Wood now insists that his field of vision did not, in fact, change between 2009 and 2015 and, further, that he was not required to

---

[1] The Court questions whether such automotive technology is relevant at all. The Fourth Circuit identified the pertinent question to be whether Wood could "propose[] any accommodation that would allow him to *meet Maryland's field of vision requirements.*" *Wood II*, 732 F. App'x at 184–85 (emphasis added). Wood claims these technologies could allow him to drive more safely, but he does not allege they would enhance his field of vision. Ultimately, however, the Court's decision does not turn on the potential relevance (or not) of the new allegations.

6

take a vision test or submit documentation verifying his field of vision as a condition of renewal in 2009. (Compl. ¶¶ 23–26.) Even taking those allegations as true, as the Court must on a motion to dismiss, they provide no basis for an exception to claim preclusion. The proper avenue to contest what Plaintiff believed to be a significant error of fact in the Fourth Circuit opinion would have been a petition for rehearing before the original panel. *See* 4th Cir. R. 40(b)(i) (2018) (listing "[a] material factual . . . matter [that] was overlooked in the decision" as a ground for rehearing). He chose not to pursue that course of action and instead asks this Court to review the Fourth Circuit's decision for accuracy. The Court has no authority to do so.[2]

Second, Plaintiff relies on a section of the Restatement that summarizes an exception to issue preclusion, where "[t]he issue [previously litigated] is one of law and . . . a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws." (Opp'n Mot. Dismiss at 6 (quoting Restatement (Second) on Judgments § 28).) Even if this exception applied to a claim preclusion analysis,[3] it does not fit the circumstances of this case.

The first element of the exception is that the issue be "one of law." Plaintiff relies on alleged inaccuracies or gaps in the first proceeding that solely concern factual questions—his field of vision in 2009, whether field of vision is "essential" to safe driving, and the types of crash avoidance technology now available in modern automobiles. None are issues of law.

---

[2] Though it does not affect the outcome of this decision either way, the Court notes that the newly alleged facts on this question do not appear particularly helpful to Plaintiff. If anything, the logic of the Fourth Circuit's opinion suggests that, if he did not satisfy the field of vision standard in 2009, he was not "otherwise qualified" for a license even then, and Defendants could have denied his earlier renewal without running afoul of the ADA or the Rehabilitation Act. Nothing in the opinion suggests that, had the Fourth Circuit believed Plaintiff's previous renewal to have been granted in violation of Maryland law, he would somehow remain entitled to a license now.

[3] Plaintiff cites no authority holding an exception to *issue* preclusion, which section 28 concerns, to be a sufficient basis for relitigating a cause of action that would otherwise be subject to *claim* preclusion. The Court need not decide, however, because, even assuming this exception might apply in some cases, it does not apply here.

Nor is either prong of the second half of the exception satisfied. Plaintiff argues that "the evolving nature of automotive technology constitutes an intervening change." (Opp'n Mot. Dismiss at 6.) The Restatement, however, refers to "an intervening change in *legal context*," which new technology is not. More importantly, the types of changes justifying an exception to the usual preclusion rules are intervening changes *between the first lawsuit and the second*. Nothing in the Complaint suggests that facts about automotive technology—or any of the newly alleged facts, for that matter—changed significantly between the two lawsuits.

For similar reasons, the Court sees no basis to find the application of the ordinary preclusion rules to be inequitable in this case. Simply put, there was nothing exceptional in the circumstances of the dismissal of the prior litigation. Nor is there anything exceptional in the new arguments Plaintiff makes now. Plaintiff disagreed with the substantive outcome of the first lawsuit and now seeks a do-over on the same questions already resolved against him. This is precisely the situation the doctrine of claim preclusion is intended to avoid.

### IV. Conclusion

For the foregoing reasons, the claims raised in the Complaint are precluded, and an Order shall enter granting Defendants' motion to dismiss.

DATED this 20 day of June, 2019.

BY THE COURT:

James K. Bredar
Chief Judge

8